UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 1 1 2018

Marlon Chung,

    Plaintiff,

—v—

Brooke's Homecare LLC, *et al.*,

    Defendants.

17-CV-2534 (AJN)

MEMORANDUM OPINON AND ORDER

ALISON J. NATHAN, District Judge:

On April 7, 2017, Plaintiff Marlon Chung filed a complaint in the Southern District of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), Art. 19 §§ 190 and 650 *et seq. See* Dkt. No. 1. Plaintiff filed an amended complaint on July 3, 2017. *See* Dkt. No. 21.

On September 27, 2017, the parties informed the Court that they had reached a settlement. *See* Dkt. Nos. 33-34. On October 26, 2017, the parties submitted a fully executed settlement for the Court's approval, *see* Dkt. No. 35, Ex. 1, along with a joint letter explaining their views on the fairness of the settlement, *see* Dkt. No. 35. The settlement agreement provides for a total settlement amount of $99,000, including attorneys' fees and costs. For the following reasons, the Court strikes the release and confidentiality provisions and otherwise grants the request to approve the settlement.

I. **Legal Standard**

In order to serve the FLSA's purpose of ensuring "a fair day's pay for a fair day's work,"

1

settlements in FLSA cases must be approved by a court or by the Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). As a result of this requirement, the Plaintiff's claims in this case cannot be dismissed with prejudice until the Court determines that the settlement is "fair and reasonable." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A "fair and reasonable" settlement is one that "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).

## II. Discussion

### A. Settlement Amount

In the joint letter, the parties persuasively argue that the settlement amount is fair and reasonable, as both a substantive and procedural matter. Procedurally, the parties engaged in arm's length negotiations. *See* Dkt. No. 35 at 8. Substantively, the total settlement amount is $99,000, $65,318.70 of which will be paid to Plaintiff. *See* Dkt. No. 35 at 8. (Defendants allocated $84,000 to Plaintiff and $15,000 for attorneys' fees, but Plaintiff's counsel seeks one third of the total settlement award pursuant to its retainer agreement with Plaintiff. *See* Dkt. No. 35 at 8-9.) Plaintiff calculated the amount of unpaid overtime and liquidated damages he is owed to be $84,908.58. *See* Dkt. No. 35 at 4-5. The settlement amount represents a significant recovery, especially given the risks associated with continuing the litigation. For example, Defendants had filed a motion to dismiss Plaintiff's amended complaint, and the Court had not yet ruled on that motion. *See* Dkt. No. 27; Dkt. No. 35 at 5-7.

### B. Attorneys' Fees and Costs

Similarly, the requested attorneys' fees and costs are reasonable. The Court agrees with other judges in this district that, when assessing the reasonableness of an attorney's fee on the basis of its percentage of the settlement, it is fairer to look to the percentage of the settlement net costs. *Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13-cv-6667, 2015 WL 5122530, at *1 & n.1 (S.D.N.Y. Aug. 31, 2015). Here, Plaintiffs' counsel is seeking attorneys' fees of one-third, or $33,000, of the total $99,000 settlement amount. That amount is equivalent to 33.56% of the settlement amount after costs ($98,318.70). Courts routinely award 33.33% of a settlement fund as a reasonable fee in FLSA cases. *See id.* at *4 (collecting cases). Using the lodestar as a "cross check" further demonstrates the reasonableness of the requested attorneys' fees. The lodestar in this case (not including costs and disbursements) is $19,700, Dkt. No. 35, Ex. 2 at 2, reflecting a billing rate of $400/hr for Nathaniel Charny and $300/hr for Russell Wheeler. Dkt. No. 35 at 5; Dkt. No. 35, Ex. 2. These rates are reasonable for this district, *see Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011), and the resulting multiplier of approximately 1.68 is below amounts regularly approved, *see deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010); *see also Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."). The requested reimbursement for costs ($681.80) is also reasonable.

### C. Release and Media Provisions

The settlement agreement contains a release provision and a provision restricting communication with the media. *See* Dkt. No. 35 at 1-3.

"A FLSA settlement cannot offer the defendant a sweeping release from liability that would 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Ploy Dee, Inc.*, 15-cv-647, 2016 WL 1626631, at *3 (S.D.N.Y. Apr. 21, 2016) (quoting *Cheeks*, 796 F.3d at 206). "The Court cannot 'countenance employers using FLSA settlements to erase all liability whatsoever in exchange for . . . payment of wages allegedly required by statute." *Id.* (alteration in original) (quoting *Lopez v. Nights of Cabiria*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).

Here, the proposed settlement agreement states,

> [W]ith respect solely and only to conduct that has arisen from the beginning of the world up until and including the date that this Agreement is fully executed . . . , the Plaintiff fully and forevermore irrevocably relinquishes, releases, waives and discharges Defendants from the Plead Claims and all other claims, actions, causes of action, suits, debts, specialties, dues, lines, bonds, bills, contracts, covenants, promises, agreements, judgments, damages, demands, claims, executions of any type, at law and/or in equity, indirect and/or direct, unknown and/or known, undiscovered and/or discovered, which they had, now have and/or hereafter can, shall and/or may have against the Defendants . . . .

Dkt. No. 35, Ex. 1, § VII(a). This Court has previously rejected similarly broad release provisions. *See Lopez*, 2016 WL 1626631, at *3. That the release provision here is mutual does not alter the Court's analysis. The Court will not approve a settlement with such a broad release provision. Because the settlement agreement contains a severability provision, which provides that "[e]very provision of the Agreement is intended to be severable," Dkt. No. 35, Ex. 1 § VIII(f), the Court strikes the release provision, Section VII(a)-(b).

In addition, the settlement agreement also contains a provision prohibiting any party or his counsel from issuing, posting, or sending any "press release, email, and/or other written, electronic, digital and/or verbal communications to any entity and/or person and/or agent and/or

4

independent contractor associated in any way with the" print media and "digital and/or electronic media of any type, including but not limited to social networking sites[ and] blogs." Dkt. No. 35, Ex. 1, § VIII(r)(1). That provision imposes equal obligations on both Plaintiff and Defendants, and because it applies only to communications with the media, it is narrower than many of the confidentiality provisions that courts in this District have struck down. *See Amaro v. Barbuto, LLC*, 16-CV-1581, 2017 WL 476730, at *3 (S.D.N.Y. Feb. 2, 2017). But by characterizing social networking sites and blogs as media, the provision sweeps a great deal of communications within its ambit. The Court is concerned that the provision is too broad. To the extent that courts in this District have considered similar provisions, they have taken different approaches. *Compare Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008, 2016 WL 922223, at *2 (Feb. 3, 2016) (concluding that a provision prohibiting plaintiffs and plaintiffs' counsel from contacting the media or using social media regarding the settlement was "the result of fair bargaining between well-represented parties and embodie[d] a reasonable compromise that d[id] not conflict with the FLSA's purpose of protecting against employer abuses"), *with Siddiky v. Union Square Hospitality Grp. LLC*, No. 15 Civ. 9705, 2017 WL 2198158, at *7 (S.D.N.Y. May 17, 2017) (explaining that at the Court's urging, the parties modified the settlement so that it limited the print and online communications of counsel, rather than those of plaintiffs). Here, the parties "have presented no argument that the provision is necessary." *Amaro*, 2017 WL 476730, at *3. The Court thus cannot approve the media provision. Accordingly, the Court strikes that provision, Section VIII(r), from the agreement.

With those revisions, the Court approves the settlement.

### III. Conclusion

The Court strikes the mutual release and media provisions and otherwise approves the proposed settlement. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: May 10, 2018
       New York, New York

_____
ALISON J. NATHAN
United States District Judge