~~Proposed Settlement Agreement 10.25.17~~

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARLON CHUNG, on behalf of himself and those similarly situated,<br><br>       Plaintiff,<br><br>vs.<br><br>BROOKE'S HOMECARE LLC, CARING PARTNERS LLC, and ERIC JOHNSON in his individual capacity, all jointly and severally,<br><br>       Defendants. | Civil Action No. 1:17-CV-02534 (AJN) |

### SETTLEMENT AND INDEMNITY
### AGREEMENT ~~AND MUTUAL RELEASE OF CLAIMS~~ And Mutual Release of Claims

This Settlement and Indemnity Agreement and Mutual Release of Claims (hereinafter "Agreement") is made and entered into by and between:

 i. Plaintiff Marlon Chung, on behalf of himself, his spouse, if any, agents, assigns, representatives, heirs, beneficiaries, successors, executors, administrators, bankruptcy trustees, and anyone who has and/or obtains any legal rights and/or claims through him (hereinafter collectively referred to as "Plaintiff" or "Chung");

 ii. Brooke's Homecare LLC, on behalf of itself, its parent(s), subsidiaries, divisions, affiliates and other related entities, and all of its incumbent and former officers, directors, owners, managing directors, shareholders, investors, agents, fiduciaries, successors, assigns and representatives and/or bankruptcy trustees, in their individual and/or representative capacities and/or anyone who has and/or obtains any legal rights and/or claims through Brooke's Homecare LLC (Hereinafter the entities described in (ii) are known collectively as "Brooke's");

1

    iii. Caring Partners LLC, on behalf of itself, its parent(s), subsidiaries, divisions, affiliates and other related entities, and all of its incumbent and former officers, directors, owners, managing directors, shareholders, investors, agents, fiduciaries, successors, assigns and representatives, bankruptcy trustees, in their individual and/or representative capacities and/or anyone who has and/or obtains any legal rights and/or claims through Caring Partners LLC. (Hereinafter the entities described in (iii) are known collectively as "Caring");

iv. Eric Johnson, on behalf of himself, his spouse, if any, agents, assigns, representatives, heirs, beneficiaries, successors, executors, administrators, bankruptcy trustees, and anyone who has and/or obtains any legal rights and/or claims through him (hereinafter collectively referred to as "Johnson");

Hereinafter Brooke's, Caring and Johnson are known collectively as the "Defendants"; and the Plaintiff and the Defendants are collectively referred to as the "Parties."

**WHEREAS**, Plaintiff commenced this Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) action on April 7, 2017 against the Defendants for unpaid overtime compensation and posting violations, by the filing of a Complaint, setting forth those claims ("Original Complaint");

**WHEREAS** the Plaintiff amended his Complaint on or about July 3, 2017 ("Amended Complaint"), and that amended document contains three causes of action, against all of the Defendants: First Cause of Action – "Failure to Pay Overtime in Violation of the FLSA", Second Cause of action – "failure to Pay Overtime Wages in Violation of State Law" and the Third Cause of Action – "Failure to Provide Wage Notice and Payment Information as required by State Law." (Collectively the "Plead Claims").

2

**WHEREAS**, based upon the Plead Claims, the Plaintiff claims that, pursuant to the FLSA, NYLL and Connecticut Law, Defendants allegedly owe him $84,908.58 in unpaid compensation and liquidated damages;

**WHEREAS**, the Defendants deny such liability claiming, among other reasons: a) the Plaintiff never worked for Caring Partners; (b) NYLL, Connecticut law and FLSA do not apply because Plaintiff was an independent contractor; and (c) even if those statutes did apply the Plaintiff is owed a lot less than the amount he is claiming;

**WHEREAS,** the parties have engaged in arm's length settlement negotiations and as a result have agreed to settle the Plead Claims, pursuant to the terms of this Agreement, as follows: Brooke's shall pay the Plaintiff $84,000.00 in alleged unpaid compensation and liquidated damages, representing 98.93 % of said unpaid compensation and liquidated damages plus $15,000.00 extra towards attorneys' fees;

**WHEREAS**, this action has not been certified as a Collective Action under FLSA or as a Class Action under NYLL and/or Connecticut Law;

**WHEREAS** the parties hereby acknowledge that the Amended Complaint is the operative pleading herein;

**WHEREAS**, Plaintiff hereby notifies this Court that he does not intend to seek class or collective actions status for the Plead Claims; and

**WHEREAS**, this Agreement incorporates the terms of the Settlement Agreement, which ~~is submitted to the Court for review and approval~~ has been approved in the form herein.

**NOW THEREFORE**, the Parties, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which are hereby acknowledged, agree

that this matter shall be, subject to Court approval, settled and dismissed on the merits, with prejudice, based upon the following terms, conditions, representations and acknowledgments:

**I.   Bound by Whereas Clauses:** The Parties agree to be bound by the provisions of the Whereas clauses, as set forth above.

**II.   Amended Complaint:** The Parties agree that the Amended Complaint supersedes the Original Complaint.

**III.   No Admission of Liability:** The Defendants deny each and every allegation of wrongdoing made by the Plaintiff in this case at bar and/or outside of the same, and that the Defendants have agreed to settle the Plead Claims solely as a business decision, i.e., to avoid the costs of litigation.

**IV. Not Intended for Use to prove Liability:** This Agreement and/or any other related documents shall not be used as evidence of the Defendants' liability in any tribunal and/or proceeding and/or under any law, ordinance, rule, regulation and/or order with respect to any claim that Plaintiff and/or any other entity has asserted and/or could have asserted and/or may assert against the Defendants.

**V. The Settlement Amount:**

   a) In consideration of the Plaintiff's execution of this Settlement Agreement and promises and covenants contained herein, and in full, final, and complete settlement of the Plead Claims against the Defendants, the Parties acknowledge and agree that the case at bar is settled and resolved for the total gross amount of ninety-nine thousand ($99,000.00) dollars and no cents, inclusive of attorney's fees and costs to be paid entirety by Brooke's. ("Settlement Amount").

**b)** Plaintiff acknowledges that the Settlement Amount is adequate consideration in exchange for Plaintiff's Release of Claims, as set forth below, as he is being paid 98.93 % of his claim for alleged unpaid compensation and liquidated damages, under FLSA and State law, plus an additional $15,000.00 towards attorneys' fees.

**VI.** <u>**The Settlement Payments:**</u>

**a)** Within ten days of the ~~Court's so-ordering this Agreement,~~ receipt of this agreement signed by the Plaintiff, Brooke's shall cause to be delivered to Plaintiff's attorney Charny & Wheeler:

**i)** an attorney escrow check payable to Marlon Chung, in the amount of $65,318.70, without any deductions and/or withholdings, in full satisfaction of the amounts Brooke's has agreed to pay Plaintiff under this Agreement for allegedly unpaid compensation and liquidated damages ("Plaintiff's Check") and to provide, by the applicable deadlines, set forth by the IRS, a form 1099 Misc (with box 3 checked); and

**ii)** an attorney escrow check payable to Charny & Wheeler, in the amount of $33,681.30, without any deductions and/or withholdings, in full satisfaction of the costs and attorneys' fees that Brooke's has agreed to pay Plaintiff under this Stipulation. ("Attorneys' Check") and to provide, by the applicable deadline, set forth by the IRS, a form 1099 Misc (with box 14 checked).

**b)** Plaintiff understands and agrees that the Defendants make no representations regarding tax obligations and/or consequences, if any, related to this Agreement; and that the Defendants take the position that at all times the Plaintiff was an independent contractor. The Plaintiff and the Defendants shall be responsible and liable to pay their own tax liabilities, to the extent that they exist, related to the $65,318.70 payment and the $33,682.30 payment.

    **c)** Plaintiff and Charny & Wheeler hereby agree that they shall be solely responsible to insure the satisfaction of any interests by any persons and/or entities in the Plaintiff's Check and/or the Attorneys' Check ("Third-Parties"), as a result of debts owed by Plaintiff and/or Charny & Wheeler to the Third Parties, including, but not limited to outstanding bills, liens, statements, rights of subrogation, reimbursement for services rendered, legal, insurance providers, hospitals, medical and/or health care providers, Medicaid, Medicare, unemployment compensation, worker's compensation, executions and/or any other government claims. ("Third-Party Claims").

    **d)** In the event that any Third-Parties assert any such Third-Party Claims against the Defendants, then the Plaintiff agrees to indemnify, defend and hold harmless the Defendants from any such claims, including, but not limited to, the payment of attorneys' fees and costs.

**VII.**   **MUTUAL RELEASES:**

    **a) Plaintiff's General Release of liability as to each of the Defendants:** In consideration for receiving the Settlement Amount, which represents payment of 98.93% of the Plaintiff's claims, under FLSA and State law, for unpaid wages and liquidated damages, plus an additional $15,000.00 extra for Plaintiff's attorneys' fees, with respect solely and only to conduct that has arisen from the beginning of the world up until and including the date that this Agreement is fully executed by the Parties and "so ordered" by the Court, the Plaintiff fully and forevermore irrevocably relinquishes, releases, waives and discharges Defendants from the Plead Claims and all other claims, actions, causes of action, suits, debts, specialties, dues, lines, bonds, bills, contracts, covenants, promises, agreements, judgments, damages, demands, claims, executions of any type, at law and/or in equity, indirect and/or direct, unknown and/or known, undiscovered and/or discovered, which they had, now have and/or hereafter can, shall and/or

may have against the Defendants (collectively "All Claims"), including but not limited to the release of the following claims and/or rights:

**i)** All Claims emanating from the common laws of any tribunals, at whatever level, from hamlet/village up through State and Federal tribunals, court and/or non-court tribunals, including arbitrations and agencies, including the common laws of New York State and Connecticut (collectively "Common Laws");

**ii)** All Claims emanating from the laws and/or rules and/or ordinances and/or regulations and/or orders and/or treaties and/or statutes and/or constitutions of any jurisdiction, from hamlet/village up through State and Federal jurisdictions, both court and/or non-court jurisdictions, including arbitrations and governmental agencies, including but not limited to:

1) New York Labor Law and regulations thereunder, including sections 190 et. seq;

2) Connecticut laws and regulations; and/or

3) the Fair Labor Standards Act, 29 USC sections 201 et. seq. and regulations thereunder and amendments; and/or

4) Federal Bankruptcy Code, 11 USC sections Section 101 et. seq. and/or rules; and/or

5) rules and regulations of any and all State departments of labor; and/or

6) the National Labor Relations Act, § 1 et seq. as amended by the Labor Management Relations Act, 1947, §101 et seq, 29 U.S.C.A. § 151 et seq.; and/or rules and/or regulations of the National Labor Relations Board; and/or

7) Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 USC section 2000e et. seq. (1964), and any amendments; and/or

8) the Civil Rights Act of 1866, 42 U.S.C. § 1981; as amended by the Civil Rights Act of 1991 and any other amendments; and/or

9) the Age Discrimination in Employment Act of 1967, 29 USC sections 621 et. seq., as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), Pub.L. 101–433, Title I, § 103, 104 Stat. 978 (Oct. 16, 1990) and any other amendments; and/or

10) the Americans with Disabilities Act of 1990, 42 USC section 1281, et. seq., and any amendments; and/or

11) the Worker Adjustment and Retraining Notification Act of 1988, 29 USC sections 2901 et. seq. and any amendments; and/or

12) the New York State Human Rights Law, N.Y.McKinney's Executive Law §§ 290–301, and any amendments; and/or

13) the New York City Human Rights Law, New York City Administrative Code, § 8–101 et seq. and any amendments; and/or

14) New York Order for Miscellaneous Industries and Occupations, 12 NYCRR section 42 and any amendments; and/or

15) the Immigration Reform and Control Act of 1986, 8 U.S.C.A. § 1324a et seq and any amendments; and/or

16) the Fair Credit Reporting Act, 15 USC sections 1681, et. seq. and any amendments;

17) the Occupational Safety and Health Act of 1970, 29 USC sections 1651, et seq. and any amendments; and/or

18) the Family and Medical Leave Act of 1993, 29 USC section 2611, et. seq. and any amendments; and/or

19) New York's Correction Law, McKinney's Correction Law §§ 750 et seq.; and/or

20) Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 et seq. and any amendments.

Collectively "Statutory Laws");

 iii) All Claims that the Plaintiff may have against the Defendants, under the Common Laws and/or the Statutory Laws, for unpaid compensation, unpaid commissions, unpaid overtime, unpaid wages, improper deductions, disability insurance, life insurance, unpaid sick leave, unpaid vacation time, unpaid travel time, unpaid spread of hours pay, unpaid penalties and/or unpaid liquidated damages, unpaid bonuses, unpaid expenses, unpaid gratuities, unpaid fees, unpaid credits, unpaid tips, unpaid service charges and unpaid retained gratuities and/or any other monies and/or nonmonetary relief that the Defendants owe and/or are liable to the Plaintiff, under any type of cause of action, whether based upon contract, negligence and/or any other legal and/or equitable theory;

 iv) Plaintiff's release of the right and/or ability to be a class and/or collective action representative and/or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding, including in connection with a governmental agency proceeding, against any of the Defendants, including proceedings before the Department of Labor for New York State and/or Connecticut, and/or the National Labor Relations Board;

 v) Plaintiff's release of the right and/or ability to recover any money from the Defendants, in connection with any nonwaivable rights and/or claims related to the such released claims; and

 vi) Plaintiff agrees that he will not seek any additional monies, above and beyond the Settlement Amount, from any of the Defendants, related in any way to any and all matters that have arisen from the beginning of the world up until and including the date that this Agreement is fully executed by the Parties and "so ordered" by the Court.

Hereinafter the entire content of this Section (V)(a) (i)-(vi) is known collectively as the "Plaintiff's Released Claims."

b) **Defendants release to the Plaintiff:** In consideration for the Plaintiff accepting the Settlement Amount and dismissing the Plead Claims, with prejudice, with respect solely and only to conduct that has arisen from the beginning of the world up until and including the date that this Agreement is fully executed by the Parties and "so ordered" by the Court, the Defendants fully and forevermore irrevocably relinquishes, releases, waives and discharges Plaintiff from all actions, causes of action, suits, debts, specialties, dues, lines, bonds, bills, contracts, covenants, promises, agreements, judgments, damages, demands, claims, executions of any type, at law and/or in equity, indirect and/or direct, unknown and/or known, undiscovered and/or discovered, which they had, now have and/or hereafter can, shall and/or may have against the Plaintiff, including under the Common Laws and Statutory Laws. ("Defendants' Released Claims").

a) Nothing in this Section VII shall preclude Plaintiff and/or Defendants from enforcing the terms of this Agreement. Also, the Plaintiff's Workers Compensation Claim, under Case number G1209457, is not impacted by Plaintiff's Released Claims and/or the Defendants' Released Claims, and, instead shall be resolved under Case number G1209457.

b) Plaintiff agrees that he shall immediately notify the Defendants if Plaintiff receives notice of any proceeding, subpoena, hearing and/or case related in any way to the services and/or monies that he earned while providing services through any of the Defendants and/or the Defendants' customers, by sending a copy of said notice to Defendants' counsel Gold Benes LLP, 1854 Bellmore Avenue, Bellmore, NY 11710.

c) Charny & Wheeler shall be deemed to have been fully and finally in all regards been paid, in full, attorney's fees and costs owing under the FLSA, NYLL and Connecticut laws regarding the Plead Claims and this instant action.

d) Once all payments have been made pursuant to this Agreement, Plaintiff's counsel shall cause to be filed with the Court a Stipulation of Discontinuance, with prejudice, in the form set forth hereto as Exhibit 1, as to all of the Defendants in this action and the Plead Claims. Plaintiff's counsel will hold all payments in escrow pending the filing with ECF of the fully executed copy of that document.

## VIII. REPRESENTATIONS AND MISCELLEOUS PROVISIONS:

**a) Settlement Reasonable:** For the reasons set forth in the Parties' Joint Letter to this Court, dated October 25, 2017, the Parties agree that the proposed settlement, in which Plaintiff will receive 98.93 % of the alleged unpaid wages and liquidated damages plus attorneys' fees and costs, is a fair and reasonable resolution of a bona fide dispute between the Parties regarding all of the Plead Claims.

**b)   No Assignments:** Plaintiff represents that he has not transferred and/or assigned to any entity and/or person any of the Plead Claims and/or Plaintiff's Released Claims. Plaintiff agrees to indemnity and hold harmless each of the Defendants against any and all claims based upon and/or related in any way to any such transfer and/or assignment.

**c)   No other Proceedings:** Plaintiff hereby represents that he has not filed any lawsuit, claim, charge and/or complaint against any of the Defendants, other than the case at bar (except for the workers' comp case # G1209457.

**d)** In the event that any agency and/or court assumes jurisdiction of any matter related to the Plaintiff's Released Claims, then Plaintiff shall promptly request, with notice to each of the

11

Defendants, that said agency and/or court dismiss the matter, as against the Defendants, with prejudice. In the event the agency and/or court refuses such request, Plaintiff agrees to defend, indemnify and hold harmless each of the Defendants from all attorneys' fees and/or costs and/or damages arising from the same.

**e) Venue and Subject Matter Jurisdiction:** Any suit, action or proceeding relating to this Agreement shall be brought in the United States District Court for the Southern District of New York before the Honorable Alison J. Nathan. The Parties hereby accept the exclusive subject matter jurisdiction of this Court for the purpose of any such suit, action and/or proceeding.

**f) Severability:** Every provision of the Agreement is intended to be severable. If any term, phrase or provision of the Agreement is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, the illegality, invalidity or unenforceability shall not affect the validity of the remainder of the Agreement, except as provided elsewhere in this Agreement.

**g) Waivers:** Except as otherwise provided herein, no waiver of any of the provisions of the Agreement shall be valid and/or effective unless in writing and signed by the parties hereto; and no waiver of any breach and/or condition of the Agreement shall be deemed to be a continuing waiver of any other breach and/or condition.

**h) Additional Representation and Warranties**: Each of the Parties represent and warrant that this Agreement has been duly authorized and delivered by said party and constitutes the valid and binding agreement of such party, enforceable in accordance with its terms.

**i) Counterparts:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same

instrument. Facsimile signatures and/or portable document format (pdf) and/or other electronic delivery shall be equally effective as delivery of a manually executed counterpart.

**j) Construction:** This Agreement has been negotiated freely and openly by the Parties, and it shall be interpreted without regard to any presumption and/or rule requiring construction against the party causing this Agreement to be drafted.

**k) Parties in Interest:** Every covenant, term, provision, and agreement contained in the Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

**l) Entire Agreement, Modification:** This Agreement constitutes the entire agreement between the Parties hereto and supersedes all prior agreements, understandings, and commitments contemporaneous agreements and understandings (whether written or oral), between the Parties with respect to the subject matter hereof and may not be amended or modified except by written instrument duly executed by all of the parties. No amendments or modifications to this Agreement shall be valid unless set forth in a writing signed by all of the Parties.

**m) Notices:** Except as otherwise specifically provided in this Agreement, all notices or designations required or permitted hereunder shall be in writing and shall be delivered to the following entities by email and also by one of the following methods: (i) personally, (ii) by overnight delivery, or (iii) by certified mail, return receipt requested, postage prepaid), addressed as follows:

>Gold Benes LLP
>Attorney for Defendants
>1854 Bellmore Avenue
>Bellmore, NY 11710
>Attention: Melissa Levine, Esq. (mlevine@goldbenes.com)
>
>Charny & Wheeler
>Attorney for Plaintiff
>9 West Market Street
>Rhinebeck, NY 12572
>Attention: Nathaniel K. Charny, Esq.
>(ncharny@charnywheeler.com).

or at such other addresses as the parties may designate in writing pursuant to this Paragraph. Notices shall be deemed given upon confirmation that the electronic mail was received, upon receipt of personal delivery or upon confirmation that the overnight delivery and/or certified mail was delivered.

n)  Plaintiff acknowledges that any relationship that he had with the Defendants terminated prior to the commencement of this case, and that, as a result of his receipt of the Settlement Amount, under this Agreement, he has been paid in full for all time worked, prior to such termination, and that the Defendants do not owe him any other monies and/or any non-monetary relief, including, but not limited to unpaid wages, vacation time, sick pay, accrued benefits, bonuses and commissions.

p)  The Parties shall execute any other instruments and/or documents that are reasonable and/or necessary to fulfil the terms of this Agreement.

q)  This Agreement shall not be binding upon the Parties until the Court "so orders" the same and until the time periods set forth in XIII(f) have passed and/or been waived by each of the Parties, in writing.

r)  **Media:**

1. Plaintiff, Plaintiff's attorneys, Defendants and Defendants' attorneys hereby agree that, regarding and/or related in any way to the case at bar, i.e., Chung v. Brooke's Homecare LLC, et. al. (1:17-CV-02534) ("Chung v. Brooke's"), including but not limited to the Parties' settlement discussions and this Agreement, that they will not issue, post, send and/or cause to be issued any press release, email, and/or other written, electronic, digital and/or verbal communications to any entity and/or person and/or agent and/or independent contractor associated in any way with the:

i) print media (including, but not limited to magazines, newsletters, newspapers (such as the New York Law Journal) and the like; and

ii) digital and/or electronic media of any type, including but not limited to social networking sites, blogs, law firm webpages, LinkedIn, Twitter, Facebook, Instagram, Snapchat, Pinterest, YouTube, Google, AOL, Yahoo, Safari, Tumblr, Reddit, Flickr, Foursquare, and the like. (collectively XIII(r)(1)(i)-(ii) shall be referred to as the "Media).

14

Chung v. Brooke's Agreement, page ____ of ____

~~2. If contacted by the Media, Plaintiff and/or Plaintiff's attorneys shall state, regarding Chung v. Brooke, that "This matter has been resolved."~~

~~3. Plaintiffs' Counsel confirms that they shall not upload and shall remove any reference from their website and any promotional materials about Chung v. Brooke's.~~

s)  The Parties respectfully submit this Agreement for approval and submit that it represents a fair and reasonable resolution of all claims made in the Amended Complaint.

r. t)  Each Party shall have twenty-one (21) days after receiving this proposed Agreement to review it and shall be entitled to revoke this Agreement, after signing it, for up to seven (7) days thereafter, pursuant to the notice provisions of this Agreement. The payments under this agreement shall be held in escrow by Plaintiff's attorney until the time periods set forth in this paragraph have past or unless each of the Parties waives their rights under this subparagraph "t," which must be done so in writing. The Parties hereby agree that the time periods set forth in this subparagraph represent a reasonable period of time for review of the Agreement.

s. u)  The Plaintiff and Plaintiff's counsel represent that Plaintiff is not suffering from any physical and/or mental impairment that would render him incapable of understanding the terms of this Agreement; he has signed this Agreement freely and voluntarily and without duress; and that no promises and/or representations, outside the four corners of this Agreement, have been made to him to induce him to enter into this Agreement.

t. v)  The Parties agree that neither side is the prevailing party herein.

u. w)  **REVIEWED WITH ATTORNEYS:** THE PARTIES ACKNOWLEDGE THAT THEY HAVE REVIEWED THE TERMS OF THIS AGREEMENT WITH THEIR RESPECTIVE ATTORNEYS AND THEY UNDERSTAND ITS TERMS.

State of _____ }
County of _____ }

Chung v. Brooke's Agreement, page \_\_\_\_ of \_\_\_\_\_

_____

Marlon Chung

    On the _____ day of _____, in the year 2017, before me, the undersigned, a Notary Public in and for the State of New York, personally appeared Marlon Chung, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                                                             _____
                                                             Notary Public

State of _____ }

County of _____ }

_____

Eric Johnson

    On the _____ day of _____, in the year 2017, before me, the undersigned, a Notary Public in and for the State of Connecticut, personally appeared Eric Johnson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

                                                              Notary Public

State of _____ }

County of _____ }

_____

BROOKE'S HOMECARE LLC

    On the _____ day of _____, in the year 2017, before me, the undersigned, a Notary Public in and for the State of Connecticut, personally appeared Eric Johnson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity and in his capacity as a member of Brooke's Homecare LLC and that by his

signature on the instrument, the individual and the LLC upon whose behalf the individual acted, executed the instrument.

_____
Notary Public

State of _____}

County of _____}

_____
CARING PARTNERS LLC

On the _____ day of _____, in the year 2017, before me, the undersigned, a Notary Public in and for the State of Connecticut, personally appeared Eric Johnson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity and in his capacity as a member of Caring Partners LLC and that by his signature on the instrument, the individual and the LLC upon whose behalf the individual acted, executed the instrument.

_____
Notary Public

Dated:   October _____, 2017            Dated:   October _____, 2017

_____       _____
Russell G. Wheeler                       Melissa Levine
Charny & Wheeler                         Of Counsel
9 W. Market St.                          Gold Benes LLP
Rhinebeck, New York 12572                1854 Bellmore Ave.
(845) 876-7500                           Bellmore, New York 11710
rwheeler@charnywheeler.com               (516) 512-6333
                                         mlevine@goldbenes.com
Attorneys for Plaintiff Marlon Chung
                                         Attorney for Defendants

                                         **SO ORDERED:**

                                         _____, **2017**

                                         _____
                                         **USDJ**